Jeffrey B. Maltzman, CA Bar No. 131758
Edgar R. Nield, CA Bar No. 135018
Gabrielle De Santis Nield, CA Bar No. 110930
Rafaela P. Castells, CA Bar No. 290828
MALTZMAN & PARTNERS, P.A.
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880
Facsimile:  (760) 942-9882
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
gabn@maltzmanpartners.com
rafaelac@maltzmanpartners.com

Attorneys for Defendant, PRINCESS CRUISE LINES, LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA TUCKER, CHRISTINA MONAHAN, LAURA RIGBY, and MARY MORRIS,<br><br>Plaintiffs,<br>vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br><br>Defendant. | Case No. 2:21-CV-01504-RGK-SK<br><br>**DEFENDANT PRINCESS CRUISE LINE LTD.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: July 12, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Magistrate: Hon. Steve Kim<br>Filed:  February 18, 2021 |

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 3

III. MEMORANDUM OF LAW .......... 3

A. Federal Maritime Law Applies to Plaintiffs' Claims .......... 3

B. Plaintiffs Cannot Recover for Emotional Distress Because They Fail to Allege Facts Demonstrating They Were Within the Zone of Danger for Contracting COVID-19 .......... 4

1. To Recover for Emotional Distress, Plaintiffs Must Plausibly Allege That They Contracted and Have Suffered Symptoms of That Disease .......... 5

2. Plaintiffs' Allegations Do Not Satisfy the Zone of Danger Test .......... 7

C. Plaintiffs' Negligence, Negligent Infliction of Emotional Distress and Gross Negligence Claims Fail to Establish the Elements of Negligence .......... 10

1. Plaintiffs Do Not Satisfy the Element of Duty .......... 11

2. Plaintiffs Do Not Satisfy the Element of Causation .......... 13

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Cases

*Archer v. Carnival Corp. & PLC*, No. 2:20-cv-4203-RGK-SK (C.D. Cal. Nov. 25, 2020) .................................................................................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 3, 9

*Barbetta* v. S/S Bermuda Star, 848 F.2d 1364 (5th Cir. 1988) ............................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 3

*Birkenholz v. Princess*, Case No. 2:20-cv-03167 (Aug. 21, 2020 C.D. Cal.) ............ 2

*Bonner v. Union Pac.*, 123 F. App'x 777 (9th Cir. 2005) .......................................... 8

*Casorio v. Princess Cruise Lines, Ltd.*, 2015 WL 4594169 (July 30, 2015) ............ 11

*Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012) .................................. 7

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) .................... 4, 6, 7, 9, 10

*Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 (D. Conn. Dec. 4, 2015) ............................................................................................................................. 8

*Cray v. Oceania Cruises, Inc.*, 600 F. Supp. 2d 1271 (S.D. Fla. 2009) .............. 10, 11

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) .................................................. 8

*Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749 (M.D.N.C. 2014) ........................ 8, 10

*Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190 (2d Cir. 2011) ........................ 8

*Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001) .......... 9

*In re Clearsky Shipping Corp.*, 2002 WL 31496659 (E.D. La. Nov. 7, 2002) .......... 9

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) .. 4

*Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir.1989) ........................ 11

*Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) ...... 11

*Leftow v. Princess Cruise Line, Ltd.*, 2018 WL 6133714 (C.D. Cal. Jan. 11, 2018) 12

*Maiava v. Princess Cruise Lines, Ltd.*, No. 2:20-cv-04393-DSF-JC (C.D. Cal. Aug. 31, 2020) ................................................................................................................ 3

*Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997) 4, 5, 6, 7, 8, 9, 10, 15

*Naeyaert v. Kimberly-Clark Corp.*, 2018 WL 6380749 (C.D. Cal. Sept. 28, 2018) ... 9

*Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018) ................ 7

ii
DEFENDANT'S MOTION TO DISMISS                                    2:21-CV-01504-RGK-SK

MALTZMAN & PARTNERS
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880 Fax: (760) 942-9882

*Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003) .............................. 4, 5, 6, 7, 8, 9

*Ortega Garcia v. United States*, 427 F. Supp. 3d 882 (S.D. Tex. 2019) ................... 10

*Saltzstine v. Princess Cruise Lines, Ltd.*, 2020 WL 8476008 (C.D. Cal. Dec. 16, 2020) ........................................................................................................ 3, 11, 13, 14, 15

*Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23 (1st Cir. 2018) .............. 9

*Smith v. A.C. & S., Inc.*, 843 F.2d 854 (5th Cir.1988) ...................................... 8

*Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008) ............................. 8

*Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168 (10th Cir.2000) ................................ 10

*Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033 (9th Cir. 2010) .................. 7, 9

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) ...................................... 3

*Weissberger v. Princess Cruise Lines, Ltd.*, 2020 WL 3977938 (C.D. Cal. July 14, 2020) .............................................................................................................. 3, 4, 15

*Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560 (11th Cir. 1991) ................ 4

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) ........................................... 3

Other Authorities

Restatement (Second) of Torts, §314A(1)(b)(1965) ................................................ 12

Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

L.R. 7-3 ................................................................................................................. 1

Defendant, PRINCESS CRUISE LINES, LTD. ("PRINCESS") hereby files its Motion to Dismiss the Plaintiffs' Amended Complaint (DE 24). This Motion is made following several conferences pursuant to L.R. 7-3 between March 30, 2021 and April 22, 2021.

## I.   INTRODUCTION

Plaintiffs Victoria Tucker, Laura Rigby, and Marry Morris ask this Court to recognize an unprecedented theory of liability for emotional distress that is squarely foreclosed by Supreme Court precedent and has been rejected by this Court. Consistent with Supreme Court, Ninth Circuit and this Court's precedent, Plaintiffs' attempts to expand emotional distress liability should be rejected and the claims of Plaintiffs Victoria Tucker, Laura Rigby, and Marry Morris should be dismissed.

Plaintiffs Victoria Tucker, Laura Rigby, and Marry Morris (hereinafter "Plaintiffs") seek to recovery for emotional distress based on their fear that they might have contracted COVID-19 during their cruise. Plaintiffs allege that they were aboard the *Grand Princess* cruise ship on a voyage with 3,534 other passengers and crew that departed from San Francisco on February 21, 2020. (Am. Compl. ¶ 12.) Plaintiffs allege that on the day they boarded, Defendant was aware that at least two passengers who had disembarked that same day had "symptoms of" COVID-19, and that 62 other passengers had been "exposed to" those two passengers who showed symptoms. (*Id.* ¶¶ 13-14.) Plaintiffs claim that they would not have boarded the vessel had they known that "passengers on the prior voyage showed symptoms of COVID-19," and that if they learned of the risk they would have "disembarked the vessel in Hawaii." (*Id.* ¶ 48, 49, 57, 58, 66, 67.) On that basis, they bring claims for negligence, negligent infliction of emotional distress, and gross negligence. (*Id.* ¶¶ 45-71, 78-99.) All Plaintiffs seek punitive damages. (*Id.* pg. 32 ll. 6-9.)

During the Parties' conferences pursuant to L.R. 7-3, opposing counsel advised that despite vague allegations in the Amended Complaint (¶¶ 53, 62, 71, 83, 89, 95), Plaintiffs Victoria Tucker, Laura Rigby, and Marry Morris are not claiming they

contracted COVID-19. Nor could they, given that these Plaintiffs do not allege experiencing any symptoms of COVID-19 at any time and therefore cannot "allege the amount of time between the alleged exposure and the date they began experiencing COVID-19 symptoms or received a positive test result – a key fact necessary to render the causation allegations plausible, not merely possible." *Birkenholz v. Princess*, Case No. 2:20-cv-03167 (Aug. 21, 2020 C.D. Cal.). The Amended Complaint admits that Plaintiffs "did not have a definitive COVID-19 diagnosis." (*Id.* ¶ 34.) And the Amended Complaint does not allege that any of the Plaintiffs experienced symptoms of COVID-19, let alone any concrete, harmful symptoms stemming from contraction of the disease. Rather, Plaintiffs' claims rest on the allegation that they were "exposed to an actual risk of physical injury," that resulted in "mental and emotional anguish." (*Id.* ¶¶ 53, 62, 71, 83, 89, 95.)

In particular, Plaintiffs allege that they "were in close proximity to conditions which did cause or could have caused serious physical, mental, emotional injury and illness." (*Id.* ¶¶ 81, 87, 93.) In this regard, Plaintiffs claim they were "placed in the zone of danger." (*Id*.) Plaintiff Victoria Tucker alleges that, after disembarking the ship and while in government quarantine, she experienced "aggravation of her preexisting anxiety and depression…due to having a longer than expected stay as a result of the required [government] quarantine," when she ran out of her psychiatric mediation. (*Id.* ¶ 26.) She claims to have experienced nightmares, night sweats, racing heart and symptoms consistent with post-traumatic stress disorder. (*Id.*) Plaintiff Laura Rigby alleges she developed gastrointestinal bleeding and a gastric ulcer "as a result of the fear and anxiety" from her shipboard experience. (*Id.* ¶ 29.) Similarly, Plaintiff Mary Morris alleges that "as a result of the fear and anxiety," she was hospitalized for gastrointestinal bleeding and gastric ulcers. (*Id.* ¶ 30.) Although Plaintiffs allege "medical complications" stemming from their "fear and anxiety" of being exposed to COVID-19, they do not claim to have contracted COVID-19 as a result of this exposure, and they do not allege that these physical effects were

symptoms of a contracted illness.

For the same reason this Court dismissed the claims in *Weissberger v. Princess Cruise Lines, Ltd.*, 2020 WL 3977938 (C.D. Cal. July 14, 2020) and *Saltzstine v. Princess Cruise Lines, Ltd.*, 2020 WL 8476008 (C.D. Cal. Dec. 16, 2020), Plaintiffs Victoria Tucker, Laura Rigby, and Marry Morris should be dismissed from the lawsuit with prejudice. *See also Maiava v. Princess Cruise Lines, Ltd.*, No. 2:20-cv-04393-DSF-JC (DE 24) (C.D. Cal. Aug. 31, 2020).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III. MEMORANDUM OF LAW

### A. Federal Maritime Law Applies to Plaintiffs' Claims

As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction and stating that the case "involves a maritime tort" (Am. Compl. ¶ 6), Federal maritime law applies to Plaintiffs' claims. Maritime law applies when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction."' *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542

3

(1995))); *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1654 n. 10 (11th Cir. 1991) ("In maritime tort cases such as this one, in which injury occurs aboard a … ship upon navigable waters, federal maritime law governs the substantive legal issues.").

### B. Plaintiffs Cannot Recover for Emotional Distress Because They Fail to Allege Facts Demonstrating They Were Within the Zone of Danger for Contracting COVID-19

The Supreme Court has squarely held that a plaintiff cannot recover for emotional distress stemming from potential exposure to a disease "unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). This rule applies to claims of emotional distress brought under federal maritime law. *Weissberger v. Princess Cruise Lines, Ltd.*, 2020 WL 3977938 (C.D. Cal. July 14, 2020). Supreme Court precedent thus requires dismissal here, because Plaintiffs do not (and cannot) plausibly claim that they either contracted COVID-19 or had sufficient symptoms of disease to establish they had contracted the virus as a result of Defendant's conduct.

As this Court explained in *Weissberger,* the Supreme Court has consistently reaffirmed this rule precisely to avoid the oppressive societal costs that would occur if claims like Plaintiffs' could go forward. As the Court has explained, "contacts, even extensive contacts," with potential carriers of diseases "are common." *Metro-North*, 521 U.S. at 434. And "there are no necessary finite limits on the number of persons who might suffer emotional injury" as a result of fear of contracting an illness. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 546 (1994). If anyone potentially exposed to a contagion could obtain damages for emotional distress, "[t]he large number of those exposed and the uncertainties that may surround recovery" would prompt a "flood" of lawsuits, *Metro-North*, 521 U.S. at 434, and would lead to "the very real possibility of nearly infinite and unpredictable liability for defendants." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003). With the COVID-19

pandemic, a "flood" has begun and more than 70 cases have already been filed relating to passengers on this cruise along with other cruises and vessels. Under well-established principles that govern emotional distress claims brought under federal maritime jurisdiction, Plaintiffs' claims should be dismissed.

### 1. To Recover for Emotional Distress, Plaintiffs Must Plausibly Allege That They Contracted and Have Suffered Symptoms of That Disease

The Supreme Court has "sharply circumscribed" recovery under federal law for "stand-alone emotional distress claims"—*i.e.*, claims of emotional harm that are not "brought on by a physical injury or disease"—by requiring that the plaintiff be within the "zone of danger" of defendant's allegedly negligent conduct. *Ayers,* 538 U.S. at 147 (2003). The Supreme Court's zone of danger test "confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) 'sustain a *physical impact* as a result of a defendant's negligent conduct'; or (2) 'are placed in *immediate risk of physical harm* by that conduct'—that is, those who escaped instant physical harm, but were 'within the zone of danger of physical impact.'" *Id.* at 146 (emphasis added).

In *Metro-North*, the Supreme Court set forth a more specific, categorical version of the zone of danger test that governs claims of emotional distress based on alleged negligent exposure to a disease. Under *Metro-North*, a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." 521 U.S. at 426-27. In other words, there is no liability for emotional distress from fear of contracting a disease unless the plaintiff either has been diagnosed with the disease or at least has sufficient symptoms to suggest they have the illness.

The Supreme Court has since reaffirmed *Metro-North*'s categorical rule, explaining in *Ayers* that "emotional distress damages may not be recovered" by "disease-free" plaintiffs. 538 U.S. at 141. The Court specifically "decline[d] to blur, blend, or reconfigure" the "clear line" between "disease-free" plaintiffs, who cannot recover, and those "who suffer from a disease," who can recover under certain

conditions. *Id.*; *see also id.* at 146 (explaining that because the plaintiff in *Metro-North* "had a clean bill of health," the Court "rejected his entire claim for relief"). The Court has also made clear that its rule applies not just to claims based on exposure to toxins like asbestos, but to any claim based on alleged exposure to a potential source of disease—specifically including "germ-laden air." *Metro-North*, 521 U.S. at 437.

By contrast, mere *exposure* to a contagion—even a significant and substantial exposure—is insufficient to establish someone is within the required "zone of danger," under either the "physical impact" prong or the "immediate risk of physical harm" prong. In *Metro-North*, the plaintiff's employer had negligently exposed him to a "massive" and "tangible" amount of asbestos, placing him in direct, close contact with asbestos for about an hour a day over a three-year period as he removed asbestos from pipes, often "covering himself with insulation dust that contained asbestos." *Id.* at 427. The plaintiff feared that this intense prolonged exposure to asbestos increased his chances of dying from cancer and the plaintiff introduced expert testimony supporting that his risk of cancer had in fact increased. *Id.* The Supreme Court nonetheless held that the plaintiff could not recover for emotional distress since he did not ultimately contract cancer, holding that his exposure to the disease-causing substance alone was insufficient to establish emotional distress liability for fear of contracting a disease. *Id.* at 430 (quoting *Gottshall*, 512 U.S. at 547-48).

In imposing these strict limits on emotional distress claims, the Supreme Court contrasted claims where a plaintiff alleges emotional harm "*brought on by* a physical injury[] or disease," which are not subject to the same zone of danger restriction. *Ayers*, 538 U.S. at 147-48. For example, a plaintiff who has contracted asbestosis after asbestos exposure can "seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages." *Id.* at 158. But the same plaintiff who was exposed to asbestos and who did not contract asbestosis cannot.

The Supreme Court adopted the strict zone of danger test specifically to avoid the "uncabined recognition of claims for negligently inflicted emotional distress,"

6

which would "hol[d] out the very real possibility of nearly infinite and unpredictable liability for defendants." *Ayers*, 538 U.S. at 146 (2003) (quoting *Gottshall*, 512 U.S. at 546). And although the Supreme Court decisions developing the zone of danger test arose in the context of the Federal Employers' Liability Act (FELA), the Ninth Circuit has expressly held that the test governs all emotional-distress claims, including those arising under federal maritime law. *See Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010); *see also, e.g.*, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (per curiam) ("federal maritime law has adopted ... the 'zone of danger' test").

Indeed, courts apply *Metro-North* specifically to dismiss cruise line passenger lawsuits. For instance, in *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018), a passenger and her family were disembarked to a hospital in Barbados and claimed that, while at the hospital, they were exposed to Ebola virus. *Id.* at 1360. The passengers were not allowed to return to the ship, which they claim added to their anxiety and they filed suit for "severe psychological damages, added to their anxiety and they filed suit for "severe psychological damages, emotional distress, much personal discomfort, uncertainty, fear and lack of safety," and "undue expenses and costs." *Id.* Applying *Metro-North*, the Court dismissed their claim, holding the passengers cannot recover for emotional harm when they "do not specify any physical harm for which they seek recovery" and there were "no plausible allegations that the Plaintiffs sustained a 'physical impact' merely by being sent to a hospital" which had Ebola-infected patients in the same hospital. *Id.* at 1362.

### 2. Plaintiffs' Allegations Do Not Satisfy the Zone of Danger Test

The hard-and-fast rule from *Metro-North*, precluding a plaintiff's recovery for emotional distress claims "unless, and until, he manifests symptoms of a disease," requires dismissal of this action. 521 U.S. at 427. Here, Plaintiffs do not allege that they contracted COVID-19 as a result of exposure on the *Grand Princess*. Nor do they allege any symptoms. Rather, Plaintiffs allege only that on the day they boarded, two

7

passengers who had disembarked that same day had "symptoms of" COVID-19, and that 62 other passengers had been "exposed to" those two passengers. (Am. Compl. ¶¶ 13-14.) That is nowhere near sufficient under *Metro-North*, which, again, squarely holds that a plaintiff cannot recover "unless, and until, he manifests symptoms of a disease." 521 U.S. at 427.[1]

Even setting aside *Metro-North*'s categorical rule that requires a diagnosis or symptoms of a disease as a threshold to recovery, Plaintiffs still would not have stated a claim under the zone of danger test. Federal courts routinely dismiss emotional distress claims when the plaintiff has not plausibly alleged that he actually suffered a physical impact or faced an imminent threat of physical harm. *See, e.g.*, *Bonner v. Union Pac.*, 123 F. App'x 777, 778 (9th Cir. 2005); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1355 (S.D. Fla. 2008); *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *12 (D. Conn. Dec. 4, 2015); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 759 (M.D.N.C. 2014); *see also, e.g.*, *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 199 (2d Cir. 2011) (affirming dismissal of IIED claim where no allegation that plaintiff was in zone of danger). Plaintiffs clearly have not claimed any "physical impact"; again, it is black-letter law that an exposure to a source of disease is not a "physical impact" under Supreme Court precedent. *Metro-North*, 521 U.S. at 430.

Nor have Plaintiffs plausibly alleged an "immediate risk of physical harm." Plaintiffs' bare assertion that they were "exposed to an actual risk of physical injury," that resulted in "mental and emotional anguish," is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of action" that cannot defeat a motion to dismiss.

---

[1] Even if Plaintiffs *had* alleged symptoms, they would still face an independent bar to show that their fear of contracting COVID-19 was "genuine and serious"—something beyond "general concern for [one's] future health." *Ayers*, 538 U.S. at 157-58 (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir.1988)); *see CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) (plaintiffs seeking fear-of-disease damages "must satisfy a high standard in order to obtain them").

*Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 678.

Moreover, now that the window of potentially contracting COVID-19 has long passed, Plaintiffs' claim must fail under the widely accepted, independent rule that if "at the time the court reviews a claim, a plaintiff who no longer fears contracting the disease or that risk, may not pursue a claim for emotional distress based on the earlier fear." *Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749, at *8 (C.D. Cal. Sept. 28, 2018). This rule, consistent with the zone of danger test, ensures that only those whose fears actually manifest in the form of an actual diagnosis can recover, in the interest of preventing a "flood" of cases inherently "less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.

Cases that *do* find an immediate risk of harm provide a helpful contrast to Plaintiffs' inadequate claims here. These cases involve "*threatened physical contact that caused, or might have caused, immediate traumatic harm*." *Metro-North*, 521 U.S. at 430 (emphasis added) (collecting cases); *see, e.g.*, *Stacy*, 609 F.3d at 1035 (freighter nearly struck plaintiff's vessel and then struck another ship, killing its captain); *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir. 2018) (plaintiffs were aboard ferry that nearly capsized); *In re Clearsky Shipping Corp.*, No. Civ. 96-4099, 2002 WL 31496659, *1 (E.D. La. Nov. 7, 2002) (plaintiff was aboard a docked casino boat as a vessel collided with nearby wharf); *Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001) (plaintiffs aboard ship that collided with another vessel). Courts' consistent focus on near-miss collisions is unsurprising. The Supreme Court in adopting the zone of danger test emphasized that it would allow recovery for "emotional injury caused by the apprehension of *physical impact*." *Gottshall*, 512 U.S. at 556. (emphasis added). And in subsequently describing the test, it has equated being "placed in immediate risk of physical harm" with "escap[ing] *instant physical harm*." *Ayers*, 538 U.S. at 146. Expanding the category of "immediate risk" claims to cover alleged exposure to a communicable disease which the Plaintiff did not contract would be unprecedented.

Because Plaintiffs were not within the zone of danger under *Metro-North*, their allegations of emotional distress, no matter how severe, are insufficient to survive a Motion to Dismiss. In *Gottshall*, one of the plaintiffs had suffered "insomnia, headaches, depression, and weight loss," followed by a "nervous breakdown." 512 U.S. at 539. The other had experienced "nausea, insomnia, cold sweats, and repetitive nightmares," plus weight loss, anxiety, and suicidal ideations. *Id.* at 536-37. The Supreme Court held that even these significant emotional injuries were not compensable because they did not stem from either a physical impact or a near-miss physical impact—*i.e.*, neither plaintiff was in the zone of danger. Indeed, even extremely grave physical results cannot be redressed unless the plaintiff was in the zone of danger. *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 757 (M.D.N.C. 2014) (no recovery for "self-inflicted gunshot wound" because plaintiff was never in zone of danger).

Plaintiffs' allegations of negligence and gross negligence are similarly barred by the Supreme Court's analysis. *Metro-North*'s zone of danger test governs all species of tort claims seeking emotional distress, whether or not styled as claims of "negligent infliction of emotional distress." *See Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C. 2014) ("Federal courts have consistently applied the zone of danger test to all stand- alone emotional distress claims.").

### C. Plaintiffs' Negligence, Negligent Infliction of Emotional Distress and Gross Negligence Claims Fail to Establish the Elements of Negligence

The elements of maritime negligence are essentially the same as those for common law negligence. *See, e.g., Cray v. Oceania Cruises, Inc.*, 600 F. Supp. 2d 1271, 1275 (S.D. Fla. 2009); *Ortega Garcia v. United States*, 427 F. Supp. 3d 882, 899 (S.D. Tex. 2019). Generally, those elements are: 1) a duty recognized by the law

requiring a certain standard of conduct for the protection of others against unreasonable risks; 2) breach of that duty; 3) a reasonably close causal connection between the breach and the resulting injury; and 4) damages. *Cray*, 600 F. Supp. 2d at 1275.

This Court has dealt with a nearly identical fact pattern in *Saltzstine*, where passengers aboard the *Grand Princess* who did not contract COVID-19 sought damages for exacerbation of medical conditions as a result of being placed in quarantine during the nascent days of the COVID-19 pandemic. Here, just like Ken Saltzstine, Victoria Tucker fails to affirmatively allege she contracted COVID-19, but instead alleges an exacerbation of a different medical condition because she "ran out of and was not given additional" medication while in quarantine. (Am. Compl. ¶ 26.). Likewise, and bearing an eerie similarity to Marla Saltzstine's allegations, neither Laura Rigby nor Mary Morris contracted COVID-19 and yet demand damages for anxiety-induced "medical complications." (*Id.* ¶¶ 29, 30).

The Court should dismiss Plaintiffs' negligence, negligent infliction of emotional distress, and gross negligence claims for two reasons. First, Plaintiffs have failed to adequately plead that Defendant breached a duty by its decision to sail. Second, even if breach is adequately alleged, Plaintiffs are unable to satisfy the causal element of their negligence claims as their alleged damages are far too attenuated from the alleged negligence to allow for a plausible inference of foreseeability.

### 1. *Plaintiffs Do Not Satisfy the Element of Duty*

It is well established that a shipping company's sole duty to its guests is to exercise "reasonable care under the circumstances of each case." *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir.1989). Furthermore, "[a] shipping company is not in the business of providing medical services to passengers." *Casorio v. Princess Cruise Lines, Ltd.*, 2015 WL 4594169, *4 (July 30, 2015), *aff'd* 677 Fed. Appx. 361 (9th Cir. 2017) (*citing Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1374

11

(5th Cir. 1988)). A carrier's duty to care for injured passengers is limited to giving "first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." *Restatement (Second) of Torts*, § 314A(1)(b) (1965); *Leftow v. Princess Cruise Line, Ltd.,* CV174031JFWFFMX, 2018 WL 6133714, at *2 (C.D. Cal. Jan. 11, 2018). There is no established duty to carry onboard every conceivable medication, to refill passengers' prescriptions, or to be prepared to serve as the frontline for previously unknown or novel pathogens.

Plaintiff Victoria Tucker's claims that because she had "a longer than expected stay as a result of the required quarantine, Victoria Tucker ran out of and was not given additional necessary psychiatric medication, which exacerbated the extreme fear and anxiety symptoms she was already feeling after being exposed to COVID-19 onboard the Grand Princess." (Am. Compl. ¶26). However, recovery for exacerbation of her pre-existing psychological condition is foreclosed for the same reason this Court dismissed Kenneth Saltzstine's claim that he was not provided with diabetes medication and had meals served to him at sporadic times which worsened his blood sugar levels. Likewise, Laura Rigby and Mary Morris' anxiety based claims fail for the same reason as Marla Saltzstine's.

Plaintiffs have failed to adequately allege that Defendant knew or should have known that COVID-19 had made its way onto the ship prior to sailing. Plaintiffs rely upon the allegation, just as the Saltzstines did, that "at least two passengers from the prior voyage on the Grand Princess on February 21, 2020 had symptoms of COVID-19." (*Id. at* ¶ 13).

In response to this exact allegation, this Court has pointed out that:

> [k]nowledge that some passengers had COVID-19 symptoms is insufficient for Defendant to have been on notice that the ship had been contaminated with COVID-19. COVID-19 symptoms range vastly: many symptoms are like the common cold or flu. Plaintiffs do not identify what symptoms the prior passengers suffered from that notified

Defendant of COVID-19's presence. Regardless, on the facts alleged, Defendant could not be expected to distinguish between passengers who displayed COVID-19 symptoms and those who displayed flu symptoms. *Saltzstine v. Princess Cruise Lines Ltd*., 2:20-CV-04997-RGK-SK, 2020 WL 8475998, at *3 (C.D. Cal. Oct. 23, 2020). Here, Plaintiffs do not offer any additional allegations in regards to what would have allowed Defendant to distinguish between the symptoms of the common cold and COVID-19 on February 21, 2020, the date of the subject sailing. Thus, Plaintiffs' Amended Complaint fails to allege a breach of duty.

### *2. Plaintiffs Do Not Satisfy the Element of Causation*

Even if Plaintiffs had adequately alleged the element of duty, they failed to satisfy the element of actual and proximate causation. As this Court explained in *Saltzstine*:

> [e]ven if Defendant had breached its duty of care by allowing passengers to board, causation remains an issue. The relationship between Plaintiffs' injury and Defendant's alleged breach is far too attenuated. It would require the Court to infer that it was reasonably foreseeable that Defendant's decision to sail would expose passengers to COVID-19, leading to all passengers being quarantined aboard the ship, that there were diabetic passengers onboard, that the diabetic passengers requested medication that Defendant failed to provide, that the ship would serve sporadic meals during the quarantine, and that Plaintiffs' blood sugars would become elevated because of the irregular meals and lack of medication. Thus, Defendant's decision to sail did not proximately cause Plaintiffs' injuries.

*Id.*

Here, the causal chain is even more attenuated. Plaintiffs' ability to establish proximate causation depends on the reasonable foreseeability not just of a shipboard quarantine, but of Plaintiffs being placed on chartered busses with no distancing protocols and sent to a U.S. Air Force Base for 14 days, during which time Victoria Tucker would run out of medication, and that Laura Rigby and Mary Morris would develop stress ulcers from fear and anxiety. (Am. Compl. ¶¶ 13-15, 25, 26, 28-30). In other words, Plaintiffs assert that it was foreseeable that (i) the *Grand Princess* would be forced to quarantine passengers in their staterooms, (ii) that the ship would be barred from entering port and thereby forced to remain at sea off the coast of California by U.S. officials, (iii) that Plaintiffs would be allowed to disembark only to be taken by bus to an Air Force Base for an additional 14 day quarantine, (iv) that while at the Air Force Bases Plaintiffs would run out of prescription medication, and (v) that because of the lack of medication Victoria Tucker would experience various psychiatric conditions, or (vi) that Laura Rigby and Mary Morris would suffer from stress ulcers resulting in gastrointestinal bleeding. Here, as in *Saltzstine*, Defendant's decision to sail did not proximately cause Plaintiffs' injuries.

Nor could Plaintiffs here premise their claim "on Defendant's failure to maintain proper screening protocols." *Saltzstine*, 2020 WL 8475998, at *3. As this Court has explained, "there was no reason for Defendant to believe that its passengers had been exposed to coronavirus prior to disembarking on February 21, 2020," and the mere "fact that a *different* ship, in another country, had experienced an outbreak could not have indicated to Defendant the need to implement more stringent safety protocols on the *Grand Princess*." *Saltzstine*, 2020 WL 8475998, at *3.

Plaintiffs independently fail to plausibly allege actual causation. The physical harms alleged by Laura Rigby and Mary Morris are not harms stemming from their contraction of COVID-19, but rather gastrointestinal bleeds from stress ulcers, which they claim were caused by "the extreme amounts of fear and anxiety" they

experienced "as a direct result of [their] shipboard experience." (Am. Compl. ¶¶ 29-30). This Court has held that, under the rationale of *Metro-North* and *Weissberger*, a Plaintiff cannot establish causation unless she plausibly alleges contracting or suffering symptoms of COVID-19—otherwise there is no causal link between the alleged negligence any cognizable injury. *See Archer v. Carnival Corp. & PLC*, No. 2:20-cv-4203-RGK-SK, ECF No. 96, at 9 (C.D. Cal. Nov. 25, 2020). As Plaintiffs' alleged harm is due to their quarantine experience, and not because they contracted COVID-19, their claims should be dismissed for the same reasons discussed above and in this Court's decisions in *Weissberger* and *Saltzstine*.

## IV. CONCLUSION

For the foregoing reasons, Defendant requests the Court grant its Motion and dismiss Plaintiffs' Victoria Tucker, Laura Rigby, and Marry Morris from the case with prejudice.

DATED: May 27, 2021  MALTZMAN & PARTNERS

By: *s/ Jeffrey B. Maltzman*
Jeffrey B. Maltzman
Rafaela P. Castells
Edgar R. Nield
Gabrielle De Santis Nield
*Attorneys for Defendant,
Princess Cruise Lines Ltd.*